P. H. ALBRIGHT V. THE PHŒNIX INSURANCE COMPANY, OF HARTFORD, CONNECTICUT.

No. 14,424.    (84 Pac. 383.)

SYLLABUS BY THE COURT.

AGENCY—*Profits Illegally Retained by an Agent.* An agent will not be permitted to retain profits derived from the management of the subject-matter of his agency in violation of his duty as such agent.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed January 6, 1906. Affirmed.

*Hackney & Lafferty,* and *G. H. Buckman,* for plaintiff in error.

*Fairchild & Lewis,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The defendant in error sued the plaintiff in error to recover money retained by him in violation of his duty as the agent of the insurance company. At the trial a demurrer to the evidence of the plaintiff was overruled, and the defendant assigns this ruling as error.

P. H. Albright, of Winfield, Kan., and G. W. Moore, of Hartford, Conn., with officers at each place, constitute the firms of P. H. Albright & Co., at Winfield, and

G. W. Moore & Co., at Hartford. They do a general real-estate and loan business. These firms were the agents of the insurance company, and transacted its business in Cowley county for many years. The insurance company has its home office in Hartford, Conn., and loans its money on real estate. When borrowers failed to pay it was the practice of the company to foreclose its mortgages, and, if necessary, bid in the land and hold it until the debt could be realized therefrom. P. H. Albright & Co. managed this business for the insurance company, and for that purpose had Grant Stafford, an attorney at Winfield, to do their legal business. They also had a clerk employed in the office by the name of W. E. Brewster.

The loan out of which the present controversy arose was long past due, and a foreclosure had been taken, but execution was held back upon a partial payment of the judgment. Some years thereafter, in 1899, P. H. Albright & Co., in response to an inquiry by the insurance company about the loan, wrote a letter in which the history of their efforts to collect was given, closing with the following:

"Our judgment is that probably we would better close him out by selling the land, and upon taking title to the land hold it for disposition in the usual way. If you are of the opinion that further delay is not in line with the best interests of the company, advise this office and we will have order of sale issued."

The company then wrote a letter which contained the following:

"We, therefore, desire you to close the matter up as soon as possible, securing title, sending us the deed with other papers, together with the amount of expense incurred, and we will remit for same."

An order of sale was then issued, and the sale advertised to take place June 26, 1899. The insurance company was advised of this action by a letter in which was the following:

"Sheriff's sale coming off the 26th instant. The case

of Julia I. Fay will be looked after in the usual way and bought in for the company, unless directed otherwise."

On June 21, five days before the sale, Albright & Co., through G. W. Moore & Co., made inquiry of the insurance company if it would take $2250 "in full settlement" of the case. The company, supposing that a settlement was being negotiated with the owner of the land, answered that it would accept $2350. On July 10, fourteen days after the sale, the company received a remittance of $2350, accompanied by the statement that it was "in settlement" of the case.

The owner of the land, being unable to save it by payment, tried to find a buyer who would pay more therefor than the debt against it. He had been informed by Albright's attorney, who had the matter in charge, that the amount of the lien was $3300. On June 1, before the sale, the owner found a buyer who would pay off the lien and waive the rent for that year. Up to this time the owner expected to pay one-third of his crop as rent, having been informed that the company would expect it by Grant Stafford, Albright's attorney, who had been informed by the owner that a buyer had been found who was able and willing to buy the land.

On the day of the sale the owner was present with his buyer, who was there intending to buy the land for $3300, if it did not sell for more. The contemplated purchaser, Mr. Fry, however, met Grant Stafford and had two or more interviews with him before the sale, and did not bid at all. Grant Stafford bid the land off in the name of Albright's clerk, W. E. Brewster, for the sum of $2000. Soon afterward Fry bought the land of Brewster for $3200, $100 less than he expected to pay for it at the sale. In this manner Albright made the difference between $3200 and the $2350 sent to the company, less the costs. Albright claims that the $2350 was practically the balance due the insurance

company, and that, having lost nothing, it should not complain because he, by a little adroit manipulation of the landowner, was able to make some money out of the transaction.

The landowner is the real sufferer in this deal, but he is not before this court and his rights cannot be protected here. If Albright had followed the instructions of his principal the landowner would have been benefited to the amount of the difference between $2350 and $3300. The proceeding at the sale, on its face, unexplained, is not commendable to the plaintiff in error. No reason appears for not holding him to a strict and rigorous accountability to his principal. No rule of law, equity or ordinary honesty offers a shield or protection to him. He deliberately deceived his principal in order to get the opportunity to make this profit. He was able to carry out his purpose only by reason of his confidential relation with the insurance company.

When the land was bid in at the sale and paid for by a credit on the insurance company's judgment it became the property of the company, and ought to have been accounted for as such. The pretense that at the time of the sale the judgment was the property of Albright by reason of the $2350 sent to the company two weeks afterward is a mere subterfuge. In that transaction there was no suggestion of a sale of the debt or judgment. It was a "full settlement" of the case.

By that transaction the insurance company intended to have the judgment satisfied, released, canceled; not sold to any one. The business transactions of the world are largely accomplished through the instrumentality of agents, and the law requiring the utmost frankness and fidelity between agent and principal cannot be too vigorously sustained and enforced. Some of the language used in this opinion may be stronger than the evidence fully sustains, but the question discussed arises upon a demurrer to the evidence, where

it is claimed that, conceding every fact proved and every inference which can be reasonably drawn therefrom to be true, still no cause of action is shown against Albright.   Under this view, which we are bound to take, the evidence justifies all that has been stated.   We think the trial court did right in overruling the demurrer.   The judgment is affirmed.

All the Justices concurring.